UNITED STATES DISTRICT COURT
DISTRICT OF MASACHUSETS

_____

HITACHI RAIL STS USA, INC.,            )
                                       )
            Plaintiff,                 )          Civil Action No. 1:24-CV-10998-MJJ
                                       )
v.                                     )
                                       )
MASSACUSETTS BAY                       )
TRANSPOTRATION AUTHORITY,              )
                                       )
            Defendant.                 )
_____)

**ANSWER, COUNTERCLAIM AND JURY DEMAND**

**OF DEFENDANT MASSACHUSETS BAY TRANSPORTATION AUTHORITY**

Defendant Massachusetts Bay Transportation Authority (the "MBTA") answers

Plaintiff's Complaint as follows:[1]

## PARTIES AND JURISDICTION

1.      The MBTA is without knowledge or information sufficient to form a belief as

to the truth of the allegations contained in this paragraph.

2.      The MBTA admits that Plaintiff Hitachi Rail STS USA, Inc. ("Hitachi

Rail") was formerly known as Ansaldo STS USA and is a successor in interest to the

same under the agreements at issue in this action.

3.      Admitted.

---

[1] This Answer responds to the numbered paragraphs of Plaintiff's Complaint. Contrary to Fed. R. Civ. P. 8's requirement that a complaint contain "a short and plain statement of the claim," Plaintiff's Complaint (a) opens with a four-page introductory statement containing legal arguments and factual allegations which are wholly duplicative of the Complaint's subsequent numbered paragraphs; and (b) includes unnumbered headings containing factual allegations. To the extent any response may be required to the introductory statement or the unnumbered headings, the MBTA incorporates by reference its numbered responses below and denies any additional allegations of fact in the introductory statement and the headings.

4.      This paragraph states a legal conclusion to which no response is required. To the extent a response may be required, the MBTA denies the allegations in this paragraph.

5.      This paragraph states a legal conclusion to which no response is required. To the extent a response may be required, the MBTA states that the Contract speaks for itself and denies the remaining allegations in this paragraph.

6.      This paragraph states a legal conclusion to which no response is required. To the extent a response may be required, the MBTA admits that a substantial part of the events giving rise to Hitachi Rail's claims took place in the venue of the Commonwealth of Massachusetts and denies the remaining allegations in this paragraph.

## FACTS

7.      The MBTA admits that this paragraph accurately identifies certain safety incidents on certain of the MBTA's rail lines and denies the remaining allegations of this paragraph.

8.      Admitted.

9.      The MBTA is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

10.      This paragraph states a legal conclusion to which no response is required. To the extent a response may be required, the MBTA admits that the Rail Safety Improvement Act requires certain railroad lines to implement positive train control ("PTC") systems and that this paragraph accurately recites general components of PTC systems.

11.      This paragraph states a legal conclusion to which no response is required.

12.      This paragraph states a legal conclusion to which no response is required.

13.     This paragraph states a legal conclusion to which no response is required.

14.     The MBTA admits that it submitted a PTC Implementation Plan, that it requested an extension to December 31, 2020 for full PTC implementation, and that the Federal Railroad Administration granted that request. The MBTA denies the remaining allegations in this paragraph.

### The Base Contract

15.     The MBTA admits that it entered into Contract No. 42-14 for $338,457,134.00 with Hitachi Rail on or about December 18, 2015 to perform work described in a Request for Proposals. The MBTA denies the remaining allegations in this paragraph.

16.     The MBTA admits that the North Side Commuter Rail Lines included in the PTC Safety Project are (1) the Fitchburg Line, (2) the Eastern Route Line (composed of the Newburyport Line and the Rockport Line); (3) the New Hampshire Main Line (Lowell Line); (4) the Wildcat Branch connection the New Hampshire Main Line at Wilmington Station to the Western Route Line at Wilmington Junction; and (5) the Western Route Line (Haverhill Line). The MBTA denies the remaining allegations in this paragraph.

17.     Admitted.

18.     This paragraph states a legal conclusion to which no response is required. To the extent a response may be required, the MBTA states that this paragraph summarizes and characterizes Section 6.29 of the parties' contract, which section speaks for itself. To the extent the allegations of this paragraph purporting to characterize the terms of the Contract differ from the Contract, the MBTA denies those allegations.

19.     This paragraph states a legal conclusion to which no response is required. To the extent a response may be required, the MBTA admits that this paragraph accurately

recites a portion of Section 6.30 but otherwise denies the allegations of this paragraph, including because it omits the requirement that the Contractor provide written notice of potential claims no later than thirty calendar days from any act or event for which it intends to seek a contractual adjustment.

20.    This paragraph states a legal conclusion to which no response is required. To the extent a response may be required, the MBTA admits that this paragraph accurately recites a portion of Section 6.30 but otherwise denies the allegations of this paragraph, including because it omits the requirements that adjustments be made in accordance with the provisions of Section 6.2 (Change Order) and that adjustments may be for an extension of time "and/or" an increase or decrease in the actual cost of performance of the Contract.

21.    The MBTA admits that this paragraph accurately recites a portion of Section 6.30 but otherwise denies the allegations of this paragraph, including because it omits the provision that Contractor's written notice must set forth the basis of its claim in sufficient detail to allow the MBTA to thoroughly evaluate the situation and provide an estimate of any costs involved, and that Contractor also shall furnish any additional information relating to the claim as the MBTA may reasonably request.

**The PTC Work**

22.    Denied.

23.    Denied.

24.    The MBTA admits that it made a November 2, 2015 presentation to the MassDOT Fiscal Management control Board and that the slide deck presented on that date speaks for itself.

25.     The MBTA admits that the parties agreed to payment terms as more fully described in Paragraph 26, incorporates its response to Paragraph 26, and otherwise denies the allegations of this paragraph.

26.     The MBTA states that this paragraph accurately recites an excerpt from Section 6.3 of the parties' contract, which document speaks for itself. To the extent the allegations of this paragraph purporting to characterize the terms of the Contract differ from the Contract, the MBTA denies those allegations. The MBTA denies the remaining allegations in this paragraph.

27.     The MBTA admits that the MBTA and Hitachi Rail signed a Notice to Proceed dated January 13, 2016 authorizing Hitachi Rail to proceed with the entire contracted work scope ("Phase I", "Phase II", and Priced Options). The MBTA denies the remaining allegations in this paragraph.

28.     The MBTA admits that Hitachi Rail submitted notices, is without knowledge or information sufficient to form a belief as to the truth of the allegation concerning Hitachi Rail's expectations, and denies the remaining allegations in this paragraph.

29.     The MBTA admits that revenue service began by (or before) August 27, 2020, admits that the PTC system was a significant upgrade, and denies the remaining allegations in this paragraph.

### Change Order 21

30.     Denied.

31.     This paragraph states a legal conclusion to which no response is required. To the extent a response may be required, the MBTA admits that North Side Automatic Train Control ("ATC") was not included in the original Contract No. 42-14.

32.    The MBTA admits that it issued a Request for Proposals ("RFP"), which document speaks for itself, and that response to the RFP were due on February 28, 2019. To the extent the allegations of this paragraph purporting to characterize the terms of the RFP differ from the RFP, the MBTA denies those allegations.

33.    The MBTA admits that Hitachi Rail and another proposer submitted responses to the RFP, which were returned unopened. The MBTA is without knowledge or information sufficient to form a belief as to the truth of the allegation concerning Hitachi Rail's proposed price.

34.    Denied.

35.    The MBTA admits that it elected to cancel the RFP on February 28, 2019 and that it returned Hitachi Rail's bid unopened. The MBTA denies the remaining allegations in this paragraph.

36.    Admitted.

37.    The MBTA admits that Change Order 21was executed by the parties and included a Technical Detail exhibit, which speaks for itself. To the extent the allegations of this paragraph purporting to characterize the terms of the CO 21 Technical Detail and Change Order 21 differ from the CO 21 Technical Detail, Change Order 21 and the Contract, the MBTA denies those allegations. The MBTA denies the remaining allegations of this paragraph.

38.    Admitted.

39.    The MBTA denies that Hitachi Rail executed Change Order 21 on October 25, 2019 and admits the remaining allegations in this paragraph.

40.    Denied.

41.     The MBTA admits that this paragraph accurately recites a portion of Change Order 21 but otherwise denies the allegations of this paragraph, including because it omits the provision that Contractor provide "design, installation, testing, and commissioning" of Automatic Train Control ('ATC') systems and associated modifications to PTC systems."

42.     The MBTA admits that the "firm, fixed price" of Change Order 21 was $253,000,000 and that CO 21 Technical Detail includes schedules of "proposed" signal house locations. The MBTA denies the remaining allegations of this paragraph.

43.     The MBTA admits that the CO 21 Technical Detail speaks for itself. To the extent the allegations of this paragraph purporting to characterize the terms of the CO Technical Detail differ from the CO Technical Detail, Change Order 21 and the Contract, the MBTA denies those allegations.

44.     The MBTA admits that this paragraph accurately recites one of the bullet points in Section 8.3 of the CO 21 Technical Detail, which speaks for itself. To the extent the allegations of this paragraph purporting to characterize the terms of the CO Technical Detail differ from the CO Technical Detail, Change Order 21 and the Contract, the MBTA denies those allegations.

45.     Denied.

46.     The MBTA denies the allegations contained in the first sentence of this paragraph. The MBTA admits that the CO 21 Technical Detail, which speaks for itself, addressed possible retrofitting or other reuse of existing infrastructure. To the extent the allegations of the second sentence purporting to characterize the terms of CO 21 Technical Detail differ from the CO 21 Technical Detail, Change Order 21 and the Contract, the

MBTA denies those allegations.  The MBTA is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the third sentence of this paragraph.

    47.    Admitted.

    48.    Admitted.

    49.    Admitted.

    50.    Admitted.

### <u>COUNT I – Breach of Contract</u>

    51.    The MBTA repeats and incorporates by reference its responses to the preceding paragraphs.

    52.    This paragraph states a legal conclusion to which no response is required. To the extent a response may be required, the MBTA admits the allegations in this paragraph.

    53.    This paragraph states a legal conclusion to which no response is required. To the extent a response may be required, the MBTA admits that the Contract provides that Hitachi Rail is to perform work set forth in the Contract and is to be paid in accordance with the Contract, including the Contract's change order provisions. The MBTA denies the remaining allegations in this paragraph.

    54.    The MBTA admits that it changed some scope under the Contract and executed change orders in connection with those changes. The MBTA denies the remaining allegations in this paragraph.

    55.    Denied.

    56.    Denied.

    57.    Denied.

58.     Denied.

59.     Denied.

60.     The MBTA admits that Hitachi Rail undertook work under Change Order 21 and denies the remaining allegations of this paragraph.

61.     The MBTA admits that Hitachi Rail was not able to repurpose existing signal houses at all of the proposed locations listed in CO 21 Technical Detail and denies the remaining allegations in this paragraph.

62.     Denied.

63.     Denied.

64.     Denied.

65.     Denied.

66.     The MBTA admits that Hitachi Rail requested an equitable adjustment to Change Order 21 in March 2022 and that the MBTA denied the request on April 21, 2022. The MBTA denies the remaining allegations in this paragraph.

67.     The MBTA is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

68.     The MBTA is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

69.     Denied.

70.     Denied.

71.     Denied.

72.     The MBTA admits that the footnote to this paragraph links to newspaper articles concerning the MBTA's transit system and otherwise denies the allegations in this paragraph.

73.     Denied.

74.     Denied.

75.     Denied.

76.     Denied.

77.     The MBTA admits that the COVID-19 pandemic began affecting North Side ATC Work in or about March 2020 and is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.

78.     The MBTA admits that the Governor of the Commonwealth issued orders concerning the COVID-19 pandemic in 2020 and 2021 and is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

79.     The MBTA admits that Section 6.33 of the Contract, which speaks for itself, includes terms and conditions relating to force majeure events. To the extent the allegations of this paragraph purporting to characterize the terms of Section 6.33 differ from the Section 6.33 and the Contract, the MBTA denies those allegations.

80.     The MBTA admits that this paragraph accurately recites a portion of Section 6.19.3 but otherwise denies the allegations of this paragraph, including because it omits the requirement that the Contractor comply with Section 6.29.

81.     This paragraph states a legal conclusion to which no response is required. To the extent a response may be required, the MBTA admits that Section 6.19 and 6.33 address

10

equitable adjustments to Contract price and/or schedule. The MBTA denies the remaining allegations in this paragraph.

82.     Denied.

83.     Denied.

84.     The MBTA admits that it closed tracks on a portion of the Gloucester branch to train traffic for a certain period of time. The MBTA denies the remaining allegations in this paragraph.

85.     Denied.

86.     Denied.

87.     Denied.

88.     Admitted.

89.     The MBTA is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

90.     The MBTA admits that Hitachi Rail sent it a written message on or about October 13, 2020 concerning power line poles, which message speaks for itself.

91.     Denied.

92.     The MBTA is without knowledge or information sufficient to form a belief as to the truth of the allegation concerning what National Grid advised Hitachi Rail on March 18, 2021 and denies the remaining allegations in this paragraph.

93.     The MBTA is without knowledge as to whether Hitachi Rail redeployed and reprioritized its survey and design team and denies the remaining allegations in this paragraph.

94.     Denied.

95.     Denied.

96.     Denied.

97.     Admitted.

98.     Denied.

99.     Denied.

100.    Admitted.

101.    The MBTA admits that Hitachi Rail requested an RFI response date of January 12, 2021 and that The MBTA responded on January 27, 2021. The MBTA denies the remaining allegations in this paragraph.

102.    Denied.

103.    The MBTA admits that it made a presentation at the February 17, 2021 PTC Steering Committee, which presentation speaks for itself. To the extent the allegations of this paragraph purporting to characterize the presentation differ from the presentation, the MBTA denies those allegations. The MBTA denies the remaining allegations in this paragraph.

104.    The MBTA is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

105.    The MBTA is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

106.    The MBTA admits that it did not direct cutover and commissioning work in mid-2021 and denies the remaining allegations in this paragraph.

107.    Denied.

108.    Denied.

109.     This paragraph states a legal conclusion to which no response is required. To the extent a response may be required, the MBTA denies the allegations in this paragraph.

110.     The MBTA admits that it marked certain submittals as "Revise and Resubmit" and denies the remaining allegations of this paragraph.

111.     Denied.

112.     Denied.

113.     Denied.

114.     Denied.

115.     Denied.

116.     Admitted.

117.     Denied.

118.     Denied.

119.     Denied.

120.     Denied.

121.     Denied.

122.     Denied.

123.     Denied.

124.     This paragraph states a legal conclusion to which no response is required. To the extent a response may be required, the MBTA denies the allegations in this paragraph.

125.     Denied.

126.     Admitted.

127.     The MBTA admits that PTC on all lines was in revenue service as of August 15, 2020 and that The MBTA has had beneficial use of the PTC system as of that date. The

MBTA does not understand the allegation that it "signed off" on the system and on that basis denies the allegation.

128.    Admitted.

129.    The MBTA admits that the Contract addresses availability testing and speaks for itself. To the extent the allegations of this paragraph purporting to characterize the terms of the Contract differ from the Contract, the MBTA denies those allegations.

130.    The MBTA admits that the Contract addresses availability testing and speaks for itself. To the extent the allegations of this paragraph purporting to characterize the terms of the Contract differ from the Contract, the MBTA denies those allegations.

131.    Admitted.

132.    This paragraph states a legal conclusion to which no response is required. To the extent a response may be required, the MBTA denies the allegations in this paragraph.

133.    The MBTA admits that Hitachi Rail achieved System Acceptance on February 29, 2024 and denies the remaining allegations in this paragraph.

134.    Denied.

135.    This paragraph states a legal conclusion to which no response is required. To the extent a response may be required, the MBTA denies the allegations in this paragraph.

136.    Denied.

137.    Denied.

138.    Denied.

139.    Denied.

140.    This paragraph states a legal conclusion to which no response is required. To the extent a response may be required, the MBTA denies the allegations in this paragraph.

141.    Denied.

142.    Denied.

143.    Denied.

144.    The MBTA admits that ATC-3 relates to radio coverage and otherwise denies the allegations in this paragraph.

145.    Denied.

146.    Denied.

147.    Denied.

148.    Denied.

149.    Denied.

## COUNT II – Breach of Covenant of Good Faith and Fair Dealing

150.    The MBTA repeats and incorporates by reference its responses to the preceding paragraphs.

151.    Denied.

152.    Denied.

153.    Denied.

154.    Denied.

155.    Denied.

## COUNT III – Unjust Enrichment/Quantum Meruit

156.    The MBTA repeats and incorporates by reference its responses to the preceding paragraphs.

157.    The MBTA admits that Hitachi Rail provided labor, materials, equipment and services to the PTC Safety Project for the MBTA's benefit and denies that Hitachi Rail acted at the MBTA's direction.

158.    The MBTA admits that it accepted certain of the work performed by Hitachi Rail and denies the remaining allegations in this paragraph.

159.    The MBTA admits that it had reasonable notice that Hitachi Rail would be performing the work on the PTC Safety Project and expected to be paid the Contract price. The MBTA denies the remaining allegations in this paragraph.

160.    The MBTA is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

161.    Denied.

162.    Denied.

163.    Denied.

## COUNT IV – Declaratory Relief

164.    The MBTA repeats and incorporates by reference its responses to the preceding paragraphs.

165.    Admitted.

166.    This paragraph states a legal conclusion to which no response is required. To the extent a response may be required, the MBTA denies the allegations in this paragraph.

167.    This paragraph states a legal conclusion to which no response is required. To the extent a response may be required, the MBTA denies the allegations in this paragraph.

## AFFIRMATIVE DEFENSES

1.      Plaintiff's claims are barred, in whole or in part, due to the contributory negligence of itself or persons for whom it was responsible.

2.      Plaintiff's claims are barred by the doctrine of estoppel.

3.      Plaintiff's claims are barred by the doctrine of waiver.

4.      Plaintiff's claims are barred for lack of consideration.

5.      Plaintiff failed to mitigate its damages.

6.      Plaintiff's claims are barred by the doctrine of unclean hands.

7.      This Court lacks jurisdiction over the MBTA pursuant to the Eleventh Amendment of the United States Constitution.

8.      This Court is not a proper venue for Plaintiffs' claims pursuant to the Eleventh Amendment of the United States Constitution.

## COUNTERCLAIM

Now comes Defendant, Plaintiff-in-Counterclaim Massachusetts Bay Transportation Authority, by and through undersigned counsel, and brings the following claims against Plaintiff, Defendant-in-Counterclaim Hitachi Rail STA USA, Inc., f/k/a Ansaldo STS USA.

### PARTIES

1.      Counterclaim Plaintiff Massachusetts Bay Transportation Authority ("MBTA") is a body politic and corporate and a political subdivision of the Commonwealth of Massachusetts, pursuant to M.G.L. c. 161A, with a principal place of business at 10 Park Plaza, Boston, Massachusetts 02116.

2.      On information and belief, Counterclaim Defendant Hitachi Rail STS USA, Inc., f/k/a Ansaldo STS USA ("Hitachi Rail") is a Delaware corporation with a principal place of business at 1000 Technology Drive, Pittsburgh, Pennsylvania 15219.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction under 28 U.S.C., Sec. 1332, where the MBTA consents to suit, because the matter is between parties of different states and the amount in controversy exceeds $75,000.

4.      Venue is proper in this action, where the MBTA consents to suit, because the MBTA is located in this district and a substantial part of the events or omissions giving rise to the MBTA's claims occurred in this district.

## BACKGROUND

A.  The Project and the Design-Build Contract's Original Scope

5.      The MBTA 's commuter rail system is divided into two sets of lines. "North Side" lines originate out of North Station and "South Side" lines originate out of South Station.

6.      Federal mandates require installation of Positive Train Control ("PTC") and Automatic Train Control ("ATC") along all of the MBTA's Commuter Rail Lines.

- o  PTC systems are designed to warn locomotive engineers and, if necessary, automatically stop a train before the occurrence of certain accidents related to human error, such as train-to-train collisions or incursions into work zones. Among other things, these systems utilize radio signals and transponders along the rail corridor to transmit data to trains. This is an additional safety system that augments the ATC system (discussed below) by providing a positive stop.

o ATC systems provide additional safety protections and speed control mechanisms to help slow or stop trains as needed as well as to control train movements within blocks and from block-to-block. These systems provide signal indications to the train cab via signals in the rail and physical signal lights alongside the tracks.

7.　　On December 15, 2015, the MBTA and Hitachi Rail (at that time known as Ansaldo STS USA) entered into an approximately $340 million design-build contract relating to implementation of PTC on both the North Side and South Side Commuter Rail Lines (the "Design Build Contract").

8.　　Notably, the Design Build Contract's original scope of work also called for implementation of ATC on three South Side Lines that did not have ATC implemented already.

9.　　Also notably, the Design Build Contract included strict notice requirements. Hitachi Rail was to provide written notice of potential claims and "an estimate of any costs involved" within thirty days from any act or event for which it intended to seek adjustment in payment, terms, or schedule. The same section of the Design Build Contract also provided that, with limited exceptions, Hitachi Rail "shall have no claim for damages of any kind on account of any delay."

B. The Design Build Contract's Expansion to Include North Side ATC

10.　　In 2019, following a sole-source procurement, the MBTA and Hitachi Rail agreed to amend the scope of the Design Build Contract to add design, installation, testing and commissioning of ATC along the five North Side Commuter Rail Lines.[2]

---

[2] These lines include the following: Eastern Route (Newburyport/Rockport branch); Western Route (Haverhill Branch); New Hampshire Route (Lowell Branch); Fitchburg Route; and Wildcat Branch.

11.     The sole source procurement method allowed the parties to draw on Hitachi Rail's already-approved ATC design work as well as its years of experience implementing PTC across the entire commuter rail system, including all of the North Side Lines, and implementing ATC across multiple South Side Lines. To that end, Hitachi Rail was directly and extensively involved in the drafting of the technical detail for the change order adding the new scope to the Design Build Contract.

12.     On October 25, 2019, the MBTA executed Change Order 21 to the Design Build Contract, expanding the Design Build Contract's scope to include the design, installation, testing and commissioning of ATC on the North Side Lines, along with associated modifications to the North Side's PTC systems ("Change Order 21").

13.     This additional scope was expressly described as implementation "within the PTC limits" along the five North Side Lines, *i.e.*, within the limits of the North Side PTC system that Hitachi Rail itself had designed, installed, tested and commissioned.

14.     Hitachi Rail was to provide this additional scope for a "firm fixed price" of $253 million.

15.     Change Order 21 called for substantial completion of the additional scope in March 2022 and final acceptance in May 2022. It also provided for assessment of up to $126,500,000 in liquidated damages in the event Hitachi Rail failed to meet those targets as follows: $70,000 per day for missing the substantial completion deadline and $35,00 per day for missing the final acceptance deadline.

C. <u>Hitachi Rail's Mismanagement and the MBTA's Resulting Damages</u>

16.    Hitachi Rail's PTC work and its North Side ATC work was plagued by design and management issues attributable to Hitachi Rail and its subcontractors. Without limitation, these include the following.

17.    <u>Hitachi Rail Turnover</u>. Hitachi Rail had unusually high staff turnover during the project, including an entire change of the project team in 2020. Hitachi Rail has had at least 5 program managers, 4 project managers, 6 construction managers, 8 testing and commissioning managers and 6 design leads. During one 18-month stretch it had no project manager at all.

18.    <u>Hitachi Rail Design Errors</u>. Many, if not most, of Hitachi Rail's design submissions included material errors requiring multiple revisions to ensure that the ATC system would function properly and safety.

19.    <u>Hitachi Rail-Caused Safety Incidents</u>. The project experienced two shutdowns due to serious safety issues caused by Hitachi Rail or its subcontractors.

20.    <u>Hitachi Rail's Uncoordinated and Inefficient Use of Limited Support Services</u>. Hitachi Rail repeatedly had to use limited support resources for rework and otherwise avoidable work, such as happened when Hitachi Rail failed to record critical data during installation and had to send personnel back into the field to develop federally-required as-in-service documents. The MBTA has provided and continues to provide extraordinarily high levels of support for the project, which has negatively impacted many other critical projects.

21.    As a direct result of Hitachi Rail's mismanagement and failures to comply with contractual requirements, the MBTA has incurred millions of dollars in excess support

costs and other costs and it has been delayed in its prosecution of other time-sensitive projects. The MBTA is continuing to incur damages attributable to Hitachi Rail.

22.     Hitachi Rail has failed to complete the project within the time required and the MBTA's liquidated damages already exceed $50 million and continue to increase on a daily basis.

## Count One – Breach of Contract

23.     The MBTA repeats and incorporates by reference the foregoing paragraphs as if fully set forth herein.

24.     The Design Build Contract, including Change Order 21 and other agreed change orders, constitutes a valid and enforceable contract.

25.     Hitachi Rail has breached the Design Build Contract.

26.     The MBTA has suffered damage, and is continuing to suffer damage, as a result of Hitachi Rail's breaches of the Design Build Contract.

27.     Hitachi Rail is liable for liquidated damages and/or compensatory damages under the Design Build Contract.

## Count Two – Declaratory Relief

28.     The MBTA repeats and incorporates by reference the foregoing paragraphs as if fully set forth herein.

29.     An actual controversy exists between the MBTA and Hitachi Rail regarding the rights and legal relations of each other under the Design Build Contract.

30.     The MBTA is entitled to declaration of the date as of which it is entitled to liquidated damages of $70,000 per day (for failure to achieve substantial completion) and the

date as of which it is entitled to liquidated damages of $35,000 per day (for failure to achieve final acceptance).

### JURY DEMAND

The MBTA demands a jury as to all matters described in this Counterclaim

### PRAYER FOR RELIEF

WHEREFORE, the MBTA prays for the following relief:

a)      Judgment entered in favor of the MBTA and against Hitachi Rail on all Counts of Plaintiff's Complaint;

b)      Judgment entered in favor of the MBTA and against Hitachi Rail on Count I of the MBTA's Counterclaim, in an amount of liquidated and/or compensatory damages to be determined by the Court;

c)      On Count II of the MBTA's Counterclaim, a declaration of the date as of which the MBTA is entitled to liquidated damages of $70,000 per day (for failure to achieve substantial completion) and the date as of which it is entitled to liquidated damages of $35,000 per day (for failure to achieve final acceptance);

d)      An award of pre-judgment interest, costs and post-judgment interest in favor of the MBTA; and

e)      Such other further legal or equitable relief as the Court deems just, proper, necessary and equitable.

Respectfully submitted,
MASSACHUSETTS BAY
TRANSPORTATION AUTHORITY,
By Its Attorney,

/s/ Jeffrey S. Follett
Jeffrey S. Follett (BBO# 564337)
LAW OFFICE OF JEFFREY S. FOLLETT
25 Garfield Street
Watertown, MA  02472
(617) 744-9255
jeff@jfollettlegal.com

Dated: May 14, 2024


## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).


/s/ Jeffrey S. Follett
Jeffrey S. Follett

Dated: May 14, 2024